**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 1:16-cr-82-8** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **WILLIAM STAPLES**, | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court are Defendant William Staples ("Defendant")'s motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (Doc. No. 885), and motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (Doc. No. 887). For the reasons provided herein, the Court will deny Defendant's motions in their entirety.

**I.      BACKGROUND**

**A.      Procedural Background**

On March 30, 2016, Defendant, along with thirteen (13) co-defendants, was charged by indictment with various child pornography-related offenses.[1] (Doc. No. 1.) On May 11, 2016, Defendant was charged by superseding indictment with: conspiring to receive and distribute child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count 11); receiving and distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) (Count 12); conspiring to publish a notice and advertisement seeking and offering to receive, exchange, produce, display, and distribute child pornography in violation of 18 U.S.C. § 2251(d) (Count 13); and publishing a notice and advertisement seeking to receive child pornography in violation of 18 U.S.C. § 2251(d) (Count 16). (Doc. No. 143.)

---

[1] Defendant was charged in the original indictment as "JOHN DOE-7, a.k.a. 'Bill Simpson.'"

Defendant and Defendant Dylan Heatherly ("Defendant Heatherly") were tried before a jury in January of 2018. At trial, Defendant moved for judgment of acquittal on all counts, which the Court denied. (Doc. No. 883 at 11: 7-25, 12: 1-24.) He was convicted on Counts 11, 12, and 13 and acquitted on Count 16. (Doc. No. 845.) Defendant now moves for judgment of acquittal on Counts 11, 12, and 13 pursuant to Federal Rule of Criminal Procedure 29(c) (Doc. No. 885), or, in the alternative, for a new trial on Counts 11, 12, and 13 pursuant to Federal Rule of Criminal Procedure 33 (Doc. No. 887). Plaintiff filed a brief in support of his motion for judgment of acquittal on May 31, 2018 (Doc. No. 886), and a brief in support of his motion for a new trial on June 1, 2018 (Doc. No. 888). The Government filed a brief in opposition to both motions on July 16, 2018. (Doc. No. 894.) Accordingly, the motions are now ripe for disposition.

### B.    Factual Background

The charges brought against Defendant stem from actions allegedly taken by Defendant while participating on several dates in 2015 in video chatrooms through the application Zoom where users requested child pornography and streamed videos of adults raping and sexually abusing prepubescent children.[2] Detective Constable Janelle Blackadar of the Toronto Police Service entered a Zoom room on July 22, 2015 in an undercover capacity and viewed Defendant William Chandler Augusta ("Defendant Augusta") stream a live video of himself sexually abusing a child to the other Zoom room participants (referred to herein as the "Live Event").

---

[2] Zoom is a downloadable application that permits users to enter video-conferencing chatrooms, where they can see live video feeds of other users in the chatroom and send text messages both to the entire chatroom and to individual chatroom users. (Doc. No. 880 at 7: 16-22; 19: 24-25; 20:1-13.) In order to enter a particular video-conferencing chatroom, one must enter the conference identification number that corresponds with that chatroom at the Zoom login screen. (Id. at 17: 7-18.)

(Doc. No. 880 at 67: 6-22.)  While Defendant was not present for the Live Event, he logged into the Zoom room shortly after the Live Event ended and spent approximately one hour logged into the Zoom room.[3]  (Doc. No. 880 at 181: 9-17; Ex. 17.)  In addition to the July 22, 2015 Zoom room session, the charges brought against Defendant also relate to other interactions in Zoom rooms, including a Zoom room session on February 28, 2015, in which Defendant participated in a group chat and communicated with Defendant Augusta privately.

## II.     DISCUSSION

### A.     Defendant's Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29

Defendant moves for judgment of acquittal as to Counts 11, 12, and 13 on the basis that the Government failed to meet its burden of proving all elements of the offenses charged in those counts.  (Doc. Nos. 885, 886.)  The Government argues in response that it presented sufficient evidence as to all elements of the challenged counts.  (Doc. No. 894.)

---

[3] Chatroom logs indicate that Defendant posted the following comments to the group chatroom during that time period:

    8:36 PM – "any perv?"

    8:42 PM – "any hot bby vids?"

    8:58 PM – "hail cigarffpumpboy…"

    9:12 PM – "anyone have hot bby vids?"

    9:18 PM – "any other….bby?"

(Exs. 54, 55.)

### 1. Legal Standard Applicable to a Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29(c) provides, in pertinent part, that "[i]f the jury has returned a guilty verdict, the [C]ourt may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "A defendant 'challenging the sufficiency of the evidence' pursuant to Rule 29 'bears a heavy burden.'" United States v. John-Baptiste, 747 F.3d 186, 201 (2014) (quoting United States v. Casper, 956 F.2d 416, 421 (3d Cir. 1992)). When a defendant attacks the sufficiency of the evidence underlying a jury verdict, the Court must review the record evidence in the light most favorable to the prosecution and uphold that verdict if "any rational trier of fact could find guilt beyond a reasonable doubt." United States v. Benjamin, 711 F.3d 371, 376 (3d Cir. 2013) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993)).

### 2. Conspiracy to Publish a Notice or Advertisement Seeking Child Pornography (Count 13)

The jury found Defendant guilty of Count 13, which charged him with conspiracy to publish a notice or advertisement seeking child pornography in violation of 18 U.S.C. § 2251(d). (Doc. No. 845.) Defendant challenges the sufficiency of the evidence relied upon for his conviction. (Doc. No. 885.)

#### a. Applicable Legal Standard

18 U.S.C. § 2251(d) makes it illegal to:

> knowingly make[], print[], or publish[], or cause[] to be made, printed, or published, any notice or advertisement seeking or offering . . . to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

18 U.S.C. § 2251(d)(1).

While the United States Court of Appeal for the Third Circuit has not expressly opined as to what qualifies as a "notice" or "advertisement" for purposes of the relevant statute, other circuits have concluded that 18 U.S.C. § 2251(d) does not require publication to the general public.  See United States v. Gries, 877 F.3d 255, 260 (7th Cir. 2017) (concluding that posts in a "private, password-protected chat room" were sufficient to sustain a conviction under 18 U.S.C. § 2251(d)); United States v. Grovo, 826 F.3d 1207, 1218-19 (9th Cir. 2017) (concluding that posts "shared with a closed community of 40 to 45 individuals" on an internet message board were sufficient to sustain a conviction under 18 U.S.C. § 2251(d)); United States v. Franklin, 785 F.3d 1365, 1369-70 (10th Cir. 2015) (concluding that sharing files to a closed online network of "friends" was sufficient to sustain a conviction under 18 U.S.C. § 2251(d)).

For a defendant to be convicted of conspiracy under the general conspiracy statute, 18 U.S.C. § 371, the Government must prove beyond a reasonable doubt that:

> (1) two or more persons agreed to commit [the underlying offense]; (2) [the defendant] was a party to or a member of that agreement; (3) [the defendant] and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective to commit [the underlying offense]; and (4) at some time during the existence of the agreement or conspiracy, at least one of the members performed an overt act in order to further the objectives of the agreement.

See United States v. Dressel, 625 F. App'x 583, 590 (3d Cir. 2015) (citing United States v. Rankin, 870 F.2d 109, 113 (3d Cir. 1989); 3d Cir. Crim. Model Jury Instructions § 6.18.371A). However, unlike under the general conspiracy statute, 18 U.S.C. § 371, "[t]here is no overt act requirement for conspiracy to advertise child pornography under § 2251(d) and (e)."  See United States v. Grovo, 653 F. App'x 512, 514 (9th Cir. 2016).

Regarding venue, 18 U.S.C. § 3237(a) provides that conspiracy can be "prosecuted in any district in which such offense was begun, continued, or completed."  See 18 U.S.C. § 3237(a);

see also United States v. Lakey, No. 3-08-cr-22, 2016 WL 7475795, at *5 (N. D. Fla. Aug. 31, 2016) (discussing the applicability of 18 U.S.C. § 3237(a) to a Section 2251(d) conspiracy charge), adopted by 2016 WL 7475792, at *1 (N.D. Fla. Dec. 28, 2016).  Additionally, the Third Circuit has held that venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy.  See United States v. Renteria, 903 F.3d 326, 329 (3d Cir. 2018) (quoting United States v. Perez, 280 F.3d 318, 329 (3d Cir. 2002)).  The Third Circuit has declined to adopt a reasonable foreseeability test to establish venue under Section 3237(a).  See id. at 331-32.  Only essential conduct elements, as opposed to circumstance elements, can provide the basis for venue.  See United States v. Auernheimer, 748 F.3d 525, 533 (3d Cir. 2014) (citing United States v. Bowens, 224 F.3d 302, 310 (4th Cir. 2000)).

### b.      Parties' Arguments

Defendant first argues that the Government failed to produce any evidence at trial of an agreement between Defendant and anyone else to publish a notice or advertisement on February 28, 2015.  (Doc. No. 886 at 4-5.)  He also argues that the Government failed to identify with whom the alleged agreement was made.  (Id. at 5.)  Defendant contends that the Government likewise failed to specify which notice or advertisement Defendant conspired to post.  (Id.)

The Government argues in response that it introduced numerous pieces of evidence at trial from which the jury could conclude that Defendant was guilty of Count 13 beyond a reasonable doubt.  (Doc. No. 894 at 21-22.)  First, the Government argues that the jury was permitted to find that a conspiracy existed based on inferences drawn from the actions of the alleged conspirators and the context of the alleged scheme.  (Id. at 23.)  The Government then discusses numerous pieces of evidence that it argues, when considered together, provide more than sufficient evidence from which a jury could draw reasonable inferences to conclude that

Defendant was guilty beyond a reasonable doubt of forming an agreement with Defendant Augusta, Defendant Christopher Wehr ("Defendant Wehr"), and other Zoom room users to post notices or advertisements for child pornography. (Id. at 23-35.) Additionally, the Government contends that requests for "bby vids" and similar comments made by Defendant and other alleged co-conspirators are the notices and advertisements described in the underlying 18 U.S.C. § 2251(d) charge. (Id. at 24-28.)

Defendant further argues that the Government failed to produce evidence that the Middle District of Pennsylvania was the appropriate venue for Count 13. (Doc. No. 886 at 6-7.) He argues that pursuant to the Third Circuit's ruling in Auernheimer, venue is proper only where an essential conduct element of the offense or an overt act in furtherance of the conspiracy is performed. (Id. at 6.) Defendant also argues that the only possible connection to the Middle District of Pennsylvania presented in the case that could establish venue related to the Live Event that was streamed on July 22, 2015, for which the Government has conceded Defendant was not present. (Id. at 7.)

The Government argues in response that venue was proper in the Middle District of Pennsylvania as to Count 13. (Doc. No. 894 at 35-40.) It argues that the circumstances of the instant case are distinguishable from those of Auernheimer, stating that in Auernheimer, where the defendant was charged with violations of the Computer Fraud and Abuse Act as a result of his alleged involvement in a personal data collection scheme, the Third Circuit deemed venue improper in the District of New Jersey because the only connection between the alleged criminal acts and the District of New Jersey was the fact that the victims resided in New Jersey. (Id. at 35.) The Government argues that here, because both elements of the underlying crime that could plausibly be construed as the essential conduct elements—the publishing of the notice or

advertisement and the transportation of the notice or advertisement—had a direct connection to the Middle District of Pennsylvania, venue was proper as to Count 13. (Id. at 36.) The Government further distinguishes the instant circumstances from those in <u>Auernheimer</u> by noting that, unlike in <u>Auernheimer</u>, this Court instructed the jury on venue, and one of the alleged co-conspirators—Defendant Augusta—was in the Middle District of Pennsylvania throughout the alleged conspiracy. (Id. at 36-37.) Additionally, it argues that because the Government found the notices and advertisements in Defendant Augusta's chat logs on Defendant Augusta's devices, which were located in the Middle District of Pennsylvania, venue is proper because each of those notices or advertisements had been sent into the Middle District of Pennsylvania. (Id. at 40.)

   c.  **Whether Defendant's Conviction as to Count 13 Is Supported by Sufficient Evidence**

    The Court concludes that the Government presented sufficient evidence to support the jury's conclusion that Defendant conspired with others to publish a notice or advertisement seeking child pornography.[4] The Government is permitted to rely on "circumstantial evidence that is based on reasonable inferences drawn from actions, statements, circumstances, and from evidence of related facts and circumstances" to prove that the alleged conspiracy existed. See

---

[4] The Court concludes that the posting of messages seeking to receive child pornography within a Zoom room is a violation of the underlying statute, 18 U.S.C. § 2251(d). The Court finds that although the publication of such messages to the Zoom room was not publication to the general public, publication of messages in the Zoom room mirrors other sets of factual circumstances that courts have deemed sufficient to be "notices" or "advertisements" under 18 U.S.C. § 2251(d). See <u>Gries</u>, 877 F.3d at 260 (concluding that posts in a "private, password-protected chat room" were sufficient to sustain a conviction under 18 U.S.C. § 2251(d)); <u>Grovo</u>, 826 F.3d at 1218-19 (concluding that posts "shared with a closed community of 40 to 45 individuals" on an internet message board were sufficient to sustain a conviction under 18 U.S.C. § 2251(d)); <u>Franklin</u>, 785 F.3d at 1369-70 (concluding that sharing files to a closed online network of "friends" was sufficient to sustain a conviction under 18 U.S.C. § 2251(d)).

<u>United States v. Hartline</u>, No. 14-cv-548, 2016 WL 8716246, at *4 (E.D. Pa. Sept. 16, 2016).

Multiple pieces of evidence support a reasonable inference by the jury that Defendant agreed with Defendant Augusta and other Zoom room users to post messages within the Zoom room offering and seeking child pornography to and from other participants. Specifically, the Court finds that the following evidence, in particular, supports a reasonable inference by the jury that Defendant participated in the alleged conspiracy: the private communication between Defendant and Defendant Augusta on February 28, 2015, in which Defendant noted that no one in the chatroom was sharing videos or pictures prior to asking Defendant Augusta if he had any materials to share (Exs. 55, 55A); Defendant's various messages to the entire chatroom requesting videos or pictures (Exs. 54, 55, 55A); the testimony of Detective Constable Blackadar regarding the rule requiring participants in the Zoom room to have their "cams on" (Doc. No. 880 at 71: 1-13); evidence indicating the frequency with which Defendant interacted with other known distributors of child pornography, including Defendants Augusta and Wehr, in online chatrooms (Ex. 61); and the various pieces of evidence that clearly permit the jury's reasonable inference that the videos and pictures Defendant and other chatroom participants were requesting and discussing were child pornography, including Defendant's other comments in the Zoom room (Exs. 54, 55, 55A), the usernames and other comments of other chatroom participants (Exs. 54, 55, 55a), and the statements and streaming content of the July 22, 2015 Zoom room (Exs. 1-8, 10).

With regard to venue, the Court finds that venue is proper in the Middle District of Pennsylvania as to Count 13.[5] First, the Court concludes that the jury was presented with

---

[5] The Court is unaware of any case in which the essential conduct elements of 18 U.S.C. § 2251(d) are specifically identified. Essential conduct elements can be distinguished from circumstance elements, which are "fact[s] that existed at the time that the defendant performed

sufficient evidence from which it could conclude that Defendant or one of his co-conspirators committed an act in furtherance of the charged conspiracy in the Middle District of Pennsylvania.[6] See Renteria, 903 F.3d at 329 (quoting Perez, 280 F.3d at 329). Additionally, the Court concludes that the evidence presented by the Government (Doc. No. 880 at 119: 5-9, 122: 24-25, 123: 1-8; Ex. 17), indicating that the notices and advertisements that were the subject of the conspiracy, including those published by Defendant, were sent to Defendant Augusta's computer in the Middle District of Pennsylvania is also sufficient to support the jury's conclusion that venue was proper in the Middle District of Pennsylvania as to Count 13. Accordingly, the Court concludes that the jury's verdict as to Count 13 was supported by sufficient evidence and will be left undisturbed.

### 3. Receipt and Distribution of Child Pornography and Aiding and Abetting Receipt and Distribution of Child Pornography (Count 12)

The jury found Defendant guilty of Count 12, which charges Defendant with receipt and distribution of child pornography and aiding and abetting the receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 845.) Defendant challenges the sufficiency of the evidence relied upon for his conviction. (Doc. No. 885.)

---

[the essential conduct elements]." See Auernheimer, 748 F.3d at 533; see also United States v. Strain, 396 F.3d 689, 694 (5th Cir. 2005) (deeming elements that "do not involve any proscribed conduct by the accused" circumstance elements, rather than essential conduct elements). Therefore, the Court concludes that given the language of 18 U.S.C. § 2251(d), venue is proper as to Count 13 wherever notices or advertisements were made, printed, published, or caused to be made, printed, or published, or, as the Third Circuit noted in Auernheimer, "wherever any of the acts in furtherance of the conspiracy took place." See Auernheimer, 748 F.3d at 533.

[6] Specifically, the Court finds the evidence indicating Defendant Augusta's participation in the alleged conspiracy while in the Middle District of Pennsylvania—such as the testimony of regarding the location of Defendant Augusta's home and computer in North Middleton Township, Pennsylvania (Doc. No. 880 at 119: 5-9, 122: 24-25, 123: 1-8; Ex. 17), and the various messages sent by Defendant Augusta relating to the posting of child pornography in the Zoom room (Exs. 54, 55, 55A)—sufficient to support a conclusion by the jury that venue was proper as to Count 13 due to Defendant Augusta's acts in furtherance of the conspiracy.

### a.    Applicable Legal Standard

18 U.S.C. § 2252(a)(2) makes it illegal to:

> knowingly receive[], or distribute[], any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or through the mails, if

> > (A)  the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

> > (B)  such visual depiction is of such conduct.

See 18 U.S.C. § 2252(a)(2).  The Third Circuit has held that in the context of 18 U.S.C. § 2252(a)(2), "distribute" means "to apportion, give out, or deliver" and "necessarily involves the transfer of materials to another person."  See United States v. Husmann, 765 F.3d 169, 174 (3d Cir. 2014).  It further held that distribution under Section 2252(a)(2) "requires evidence that a defendant's child pornography materials were completely transferred to or downloaded by another person."  See id. at 176.

Further, under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  See 18 U.S.C. § 2(a).  Under this theory of liability, the Government must prove beyond a reasonable doubt the following four elements:

> [f]irst, the person who is being aided must be intentionally committing a crime; second, the aider or abettor must know that the other is committing a crime; third, the aider or abettor must have the purpose to aid that other to commit the crime; and, finally, fourth, the aider must in fact render aid or assistance.

See <u>United States v. Quality Formulation Labs, Inc.</u>, 512 F. App'x 237, 241 (3d Cir. 2013)

(citing <u>United States v. Nolan</u>, 718 F.2d 589, 592 (3d Cir. 1983)).

Regarding venue, 18 U.S.C. § 3237(a) provides that continuing offenses can be

"prosecuted in any district in which such offense was begun, continued, or completed." <u>See</u> 18

U.S.C. § 3237(a); <u>see also</u> <u>United States v. Stokes</u>, No. 12-cr-3091, 2014 WL 2895409, at *2 (W.

D. Mo. June 26, 2014) ("Courts recognize that offenses under 18 U.S.C. §§ 2251 and 2252 are

'continuing offenses' that occur in more than one district, and to which section 3237 applies.").

Only essential conduct elements, as opposed to circumstance elements, can provide the basis for

venue. <u>See</u> <u>Auernheimer</u>, 748 F.3d at 533 (citing <u>Bowens</u>, 224 F.3d at 310).

### b.    Parties' Arguments

Plaintiff argues that the Government failed to produce sufficient evidence as to each

element of Count 12.[7] (Doc. No. 886 at 7-10.) Plaintiff specifically argues that the

Government's evidence was lacking as to venue, stating that under <u>Auernheimer</u>, venue is

appropriate only where an essential conduct element occurred, and no such essential conduct

element occurred in or was connected to the Middle District of Pennsylvania. (<u>Id.</u> at 8-10.) In

response, the Government argues that regardless of whether the jury convicted Defendant of

Count 12 pursuant to the theory that Defendant directly received child pornography or pursuant

to the theory that Defendant aided and abetted Defendant Wehr in the distribution of child

pornography, sufficient evidence was presented at trial to support the determination that venue

was proper in the Middle District of Pennsylvania. (Doc. No. 894 at 41-46.)

---

[7] Although Defendant challenges the evidence as to all elements of Count 12, he articulates
specific arguments only in relation to venue. (Doc. No. 886 at 7-10.)

In regard to conviction pursuant to the theory that Defendant directly received a child pornography image, the Government argues that the essential conduct elements for a violation of 18 U.S.C. § 2252(a)(2) are the first two elements: (1) that Defendant "knowingly received or distributed a visual depiction;" and (2) "that the visual depiction was shipped or transported using any means or facility of interstate or foreign commerce." (Doc. No. 894 at 41-42.) It contends that there is sufficient evidence from which the jury could conclude that the Middle District of Pennsylvania was the proper venue for both of the elements. It contends that the evidence of Defendant and Defendant Augusta communicating on February 28, 2015 (Ex. 55A), was sufficient for the jury to have concluded that Defendant received a visual depiction sent by Defendant Augusta from the Middle District of Pennsylvania. (Id. at 42-43.) Additionally, the Government contends that the same evidence was sufficient for the jury to conclude that the visual depiction was shipped or transported via the Middle District of Pennsylvania. (Id.)

As to conviction pursuant to the theory that Defendant aided and abetted Defendant Wehr in his distribution of child pornography, the Government also argues that there is sufficient evidence to support the jury's determination that venue was proper in the Middle District of Pennsylvania as to Count 12 on the basis of the July 22, 2015 chat logs. (Id. at 43-46.) It argues that those chat logs indicate that Defendant asked for other members, including Defendant Wehr, to post child pornography, and that shortly thereafter Defendant Wehr sent child pornography to the other chatroom users, including to Defendant Augusta in the Middle District of Pennsylvania. (Id.) The Government further asserts that there was sufficient evidence that the Middle District of Pennsylvania was the proper venue as to both Defendant's encouragement—in that his message to the other Zoom room participants was sent to Defendant Augusta in the Middle District of Pennsylvania—and the essential conduct elements fulfilled by Defendant Wehr, the

principal— in that he distributed child pornography into the Middle District of Pennsylvania

when he sent child pornography to the chatroom users, which included Defendant Augusta.  (Id.)

**c.      Whether Defendant's Conviction as to Count 12 Is Supported by Sufficient Evidence**

The Court concludes that Defendant's conviction as to Count 12 is supported by

sufficient evidence.  Specifically, in regard to Defendant's argument that venue was improper as

to Count 12, the Court concludes that sufficient evidence was presented for the jury to find, by a

preponderance of the evidence, that the Middle District of Pennsylvania was a proper venue as to

Count 12.  The Court agrees with the Government's argument that, regardless of whether the

jury convicted Defendant based on a theory that Defendant directly received child pornography,

or based on a theory that Defendant aided and abetted Defendant Wehr in his distribution of

child pornography, the evidence supports the jury's conclusion that venue was proper in the

Middle District of Pennsylvania.

As an initial matter, the Court finds that the first element of 18 U.S.C. § 2252(a)(2), that

the defendant "knowingly receive[d], or distribute[d]" child pornography, is the offense's

essential conduct element. [8]  In regard to a conviction based on Defendant directly violating 18

_____

[8] The Court is unaware of any authority within this Circuit that specifically addresses what the essential conduct elements of 18 U.S.C. § 2252(a)(2) are.  Thus, the Court looks to the Third Circuit's essential conduct element analysis in Auernheimer in its determination of the essential conduct elements of 18 U.S.C. § 2252(a)(2).

In Auernheimer, the elements of the statute at issue—18 U.S.C. § 1030(a)(2)(C)—were: "that the defendant (1) intentionally (2) accessed without authorization (or exceeded authorized access to) a (3) protected computer and (4) thereby obtained information."  See Auernheimer, 748 F.3d at 533 (citing United States v. Willis, 476 F.3d 1121, 1125 (10th Cir. 2007)).  The Third Circuit concluded that the essential conduct elements were "accessing without authorization and obtaining information."  See id.  Importantly, the Third Circuit clarified that venue was proper wherever the defendant was when he accessed the information, as well as wherever the information was obtained—that is, where the obtained information was located when the defendant accessed it.  See id. at 534.  Similarly, 18 U.S.C. § 2252(a)(2) contemplates a situation in which an individual receives or distributes information from or to another location,

14

U.S.C. § 2252(a)(2), the Court finds that sufficient evidence was presented at trial to support a conclusion by the jury that venue was proper as to Count 12. Specifically, the evidence of Defendant's private communication with Defendant Augusta in the Zoom room on February 28, 2015[9] (Exs. 55, 55A); other comments made by Defendant, Defendant Augusta, and other Zoom room participants on February 28, 2015 (Exs. 55, 55A); the chat logs and recordings from the July 22, 2015 Zoom room during the Live Event (Exs. 1-8, 10, 54, 55, 55A); and the evidence indicating that Defendant Augusta was in the Middle District of Pennsylvania when he sent child pornography to Defendant and the other Zoom room participants (Doc. No. 880 at 119: 5-9, 122: 24-25, 123: 1-8; Ex. 17), are sufficient evidence to support a reasonable inference from the jury that Defendant knowingly received child pornography sent by Defendant Augusta from the Middle District of Pennsylvania on February 28, 2015.

The Court also finds that sufficient evidence was presented at trial to support a determination by the jury that venue was proper in the Middle District of Pennsylvania based on a theory that Defendant aided and abetted Defendant Wehr in his distribution of child pornography. Evidence was presented at trial from which a jury could conclude that Defendant

---

potentially through electronic means. Accordingly, the Court concludes that in the case of a recipient, venue is proper in the location at which the recipient receives the visual depiction, as well as in the location from which the recipient receives the visual depiction; and in the case of a distributor, venue is proper in the location to which the distributor distributes the visual depiction, as well as in the location from which the distributor distributes the visual depiction. See United States v. Gonzalez, 683 F.3d 1221, 1225 (9th Cir. 2012) (stating that in regard to venue determination of a continuing offense, "the crime occurs both where a communication is made and where it is received").

[9] At 9:25 AM, Defendant Augusta asked Defendant, "hows the crowd in here?" Defendant replied, "no one sharing.." Defendant Augusta then asked, "you think there's lots of limits?," to which Defendant replied, "no…just no one shareing.." A few minutes later, Defendant asked Defendant Augusta, "did you have some hot ones to share?" Later, Defendant asked Defendant Augusta, "u live or is that a vid?," to which Defendant Augusta replied, "you of all people asked." Defendant Augusta then added, "u know i'm live." (Exs. 55, 55A.)

encouraged Defendant Wehr and other Zoom room participants to send child pornography to those present in the chatroom, including Defendant Augusta, who was located within the Middle District of Pennsylvania, and that Defendant Wehr acted upon Defendant's encouragement.[10] Accordingly, the Court concludes that the jury's determination that Defendant was guilty of violating 18 U.S.C. § 2252(a)(2), as set forth in Count 12 of the indictment, was supported by sufficient evidence and, as a result, will not disturb the jury's finding as to this count.

### 4.    Conspiracy to Receive and Distribute Child Pornography (Count 11)

The jury also found Defendant guilty of Count 11, which charges Defendant with conspiracy to receive and distribute child pornography in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 845.)  Defendant challenges the sufficiency of the evidence relied upon for his conviction.  (Doc. No. 885.)

### a.    Applicable Legal Standard

18 U.S.C. § 2252(a)(2) makes it illegal to:

> knowingly receive[], or distribute[], any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for

---

[10] For example, the chatroom logs indicate that on July 22, 2015 at 8:42 PM, Defendant asked the other Zoom room participants, "any hot bby vids?"  (Exs. 54, 55.)  One minute later, another Zoom room participant posted, "thanks cigar," which the jury could reasonably conclude was a reference to Defendant Wehr, whose username was "cigarffpumpboy."  (Exs. 54, 55.)  That conclusion, combined with other comments which appear to refer to child pornography being streamed in the Zoom room at that time (Exs. 54, 55), supports a reasonable conclusion by the jury that Defendant Wehr streamed child pornography to the Zoom room participants upon the encouragement of Defendant.  Additionally, at 8:58 PM on July 22, 2015, Defendant posted the message, "hail cigar cigarffpumpboy…" (Exs. 54, 55), which the jury could reasonably conclude, in consideration with the testimony of Detective Constable Blackadar that in the context of these types of chatrooms "hail" meant an indication of approval or encouragement of the content another user was sharing (Doc. No. 880 at 45: 7-24), was continued encouragement by Defendant for Defendant Wehr to stream additional child pornography in the Zoom room.

distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or through the mails, if

> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

> (B) such visual depiction is of such conduct.

See 18 U.S.C. § 2252(a)(2). The Third Circuit has held that in the context of 18 U.S.C. § 2252(a)(2), "distribute" means "to apportion, give out, or deliver" and "necessarily involves the transfer of materials to another person." See Husmann, 765 F.3d at 174. It further held that distribution under Section 2252(a)(2) "requires evidence that a defendant's child pornography materials were completely transferred to or downloaded by another person." See id. at 176.

To convict a defendant of conspiracy under the general conspiracy statute, 18 U.S.C. § 371, the Government must prove beyond a reasonable doubt that:

> (1) two or more persons agreed to commit [the underlying offense]; (2) [the defendant] was a party to or a member of that agreement; (3) [the defendant] and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective to commit [the underlying offense]; and (4) at some time during the existence of the agreement or conspiracy, at least one of the members performed an overt act in order to further the objectives of the agreement.

See Dressel, 625 F. App'x at 590 (citing Rankin, 870 F.2d at 113; 3d Cir. Crim. Model Jury Instructions § 6.18.371A). However, unlike under the general conspiracy statute, 18 U.S.C. § 371, there is not an overt act requirement for conspiracy to distribute or receive child pornography under 18 U.S.C. §§ 2252(a) and (b). See Grovo, 653 F. App'x at 514 (discussing lack of overt act requirement under similarly-worded 18 U.S.C. §§ 2251(d) and (e)).

Regarding venue, 18 U.S.C. § 3237(a) provides that conspiracy can be "prosecuted in any district in which such offense was begun, continued, or completed." See 18 U.S.C. § 3237(a);

see also Stokes, 2014 WL 2895409, at *2 ("Courts recognize that offenses under 18 U.S.C. §§ 2251 and 2252 are 'continuing offenses' that occur in more than one district, and to which section 3237 applies."). Additionally, the Third Circuit has held that venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy. See Renteria, 903 F.3d at 329 (quoting Perez, 280 F.3d at 329). The Third Circuit has declined to adopt a reasonable foreseeability test to establish venue under Section 3237(a). See id. at 331-32. Only essential conduct elements, as opposed to circumstance elements, can provide the basis for venue. See Auernheimer, 748 F.3d at 533 (citing Bowens, 224 F.3d at 310).

### b. Parties' Arguments

Defendant argues that the Government failed to produce evidence as to the parameters of the alleged conspiracy, its objective, or who was involved. (Doc. No. 886 at 10.) He also argues that the Government failed to provide evidence that the Middle District of Pennsylvania is the proper venue for Count 11. (Id. at 10-11.) Namely, Defendant alleges that none of the child pornography evidence related to him bears any connection to the Middle District of Pennsylvania. (Id.) In response, the Government argues that it presented overwhelming evidence that Defendant conspired with others to receive or distribute child pornography. (Doc. No. 894 at 46.) It also argues that sufficient evidence was presented to establish that venue was proper in the Middle District of Pennsylvania. (Id.) To that end, the Government cites its arguments regarding venue and conspiracy in the context of Count 13 in arguing that sufficient evidence supports the jury's conclusions that Defendant was guilty of conspiracy to distribute or receive child pornography and that venue was proper as to Count 11. (Id. at 46-48.)

### c. Whether Defendant's Conviction as to Count 11 Is Supported by Sufficient Evidence

The Court finds that the jury's verdict that Defendant was guilty beyond a reasonable doubt of conspiring to receive or distribute child pornography is supported by sufficient evidence. Specifically, the Court finds that much of the evidence it noted as supporting the jury's verdict as to Count 13, as explained supra, also supports a conclusion by the jury that Defendant conspired with Defendant Augusta and other Zoom room participants to distribute and receive child pornography through the Zoom room pursuant to 18 U.S.C. § 2252(a)(2).[11]

In regard to venue, the Court finds that sufficient evidence was presented at trial to support the jury's conclusion that venue was proper in the Middle District of Pennsylvania as to Count 11. Specifically, evidence of Defendant Augusta's publication of child pornography while he was in the Middle District of Pennsylvania (Doc. No. 880 at 119: 5-9, 122: 24-25, 123: 1-8; Ex. 17), was sufficient evidence for the jury to conclude that Defendant Augusta—an alleged co-conspirator—committed an act in furtherance of the alleged conspiracy in the Middle District of Pennsylvania. See Auernheimer, 748 F.3d at 533 ("In the context of a conspiracy charge, 'venue can be established wherever a co-conspirator has committed an act in furtherance of the

---

[11] This evidence includes: the private communication between Defendant and Defendant Augusta on February 28, 2015, in which Defendant notes that no one else is sharing, then asks Defendant Augusta twice if he has anything to share (Exs. 55, 55A); Defendant's various messages to the entire chatroom requesting videos or pictures (Exs. 54, 55, 55A); the testimony of Detective Constable Blackadar regarding the rule requiring participants in the Zoom room to have their "cams on" (Doc. No. 880 at 71: 1-13); evidence indicating the frequency with which Defendant interacted with other known distributors of child pornography, including Defendants Augusta and Wehr, in online chatrooms (Ex. 61); and the various pieces of evidence that clearly permit the jury's reasonable inference that the videos and pictures Defendant and other chatroom participants are requesting and discussing are child pornography, including Defendant's other comments in the Zoom room (Exs. 54, 55, 55A), the usernames and other comments of other chatroom participants (Exs. 54, 55, 55a), and the statements and streaming content of the July 22, 2015 Zoom room (Exs. 1-8, 10).

conspiracy.'") (citing Perez, 280 F.3d at 329; Hyde v. United States, 225 U.S. 347, 356-67

(1912)).  Accordingly, the Court concludes that the jury's determination that Defendant was

guilty of conspiracy to receive or distribute child pornography pursuant to 18 U.S.C. §

2252(a)(2), listed at Count 11 of the indictment, was supported by sufficient evidence and will be

left undisturbed.

## B.    Defendant's Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33

### 1.    Legal Standard for a Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33

Pursuant to Federal Rule of Criminal Procedure 33, "the [C]ourt may vacate any

judgment and grant a new trial if the interest of justice so requires."  See Fed. R. Crim. P. 33(a).

The Court "can order a new trial on the ground that the jury's verdict is contrary to the weight of

the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has

occurred —that is, that an innocent person has been convicted.'"  United States v. Johnson, 302

F.3d 139, 150 (3d Cir. 2002) (quoting United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994)).

Rule 33 motions "should be 'granted sparingly and only in exceptional cases.'"  United States v.

Silveus, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting Gov't of V.I. v. Derricks, 810 F.2d 50, 55

(3d Cir. 1987)).

### 2.    Whether Defendant is Entitled to a New Trial Pursuant to Federal Rule of Criminal Procedure

#### a.    Admission of Evidence Related to the Live Event

##### i.    Applicable Legal Standard

Under Rule 402 of the Federal Rules of Evidence, "all relevant evidence is admissible,"

except as otherwise barred by the Constitution, federal law, or the Federal Rules of Evidence.

See Fed. R. Evid. 402.  Rule 401 of the Federal Rules of Evidence provides that evidence is

relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." See Fed. R. Evid. 401. The Third Circuit has held that evidence that allows for a logical inference to be drawn that supports the jury's determination as to the fulfillment of an element of a charged crime is properly admitted under Rules 401 and 402. See United States v. Lee, 612 F.3d 170, 184 (3d Cir. 2010). Rule 403 of the Federal Rules of Evidence provides that "[t]he [C]ourt may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed. R. Evid. 403.

### ii.     Parties' Arguments

Defendant argues that he is entitled to a new trial because the Court admitted images and chat logs related to the Live Event into evidence, when it was undisputed that Defendant was not involved in the Live Event. (Doc. No. 888 at 3-5.) Defendant argues that such evidence was improperly admitted and unfairly prejudiced him. (Id. at 3.) He contends that despite his lack of connection to the Live Event, the Government made evidence related to the Live Event the centerpiece of the trial and implied in its rebuttal that Defendant was present for the Live Event. (Id. at 4-5.)

In response, the Government argues that the Court properly admitted the Live Event evidence as direct evidence against Defendant because he had been involved in the conspiracy with Defendant Augusta. (Doc. No. 894 at 50-58.) The Government argues that the evidence relating to the Live Event was necessary to establish the activity that was occurring in the Zoom room that Defendant entered on July 22, 2015 because Detective Constable Blackadar had stopped recording by the time Defendant logged into the chatroom, and, thus, no direct visual

evidence was available for the period that Defendant was logged into the Zoom room. (Id. at 52.) Further, the Government contends that the visual depictions of the Live Event and the videos streamed before and after it could help lead the jury to the reasonable inference, upon viewing the chat logs, that Defendant was requesting visual depictions of child pornography. (Id.) Additionally, the Government argues that because it did not have the visual evidence from the February 28, 2015 chatroom, the introduction of the visual evidence of the Live Event could provide the jury with context to the chat logs from February 28, 2015 and help it reach the reasonable inference that the live sexual abuse of a minor was streaming in the chatroom on February 28, 2015. (Id. at 53-54.) The Government argues that such a reasonable inference would help the jury assess Defendant's knowledge, intent, and willingness to be involved in the charged conspiracies. (Id.) In regard to Defendant's contention that the Government improperly implied that Defendant was present for the Live Event in its rebuttal, the Government argues that no such implication was created by its statements, and that even if it were, the challenged statements did not prejudice Defendant so as to influence the outcome of the trial. (Id. at 54-58.)

### iii. Whether the Court Should Grant a New Trial Due to the Admission of Evidence Related to the Live Event

The Court concludes that it properly admitted the evidence related to the Live Event against Defendant. Regarding Defendant's Rule 401 challenge, the Court finds that the Live Event evidence was relevant to the jury's determination of several elements of the charges brought against Defendant. First, the visual depictions of the Live Event, coupled with the chatroom logs from the time period Defendant was logged in to the Zoom room on July 22, 2015 allowed the jury to infer what was occurring in the Zoom room when Defendant was logged in; no visual evidence existed for that period of time because Detective Constable Blackadar had stopped recording by the time Defendant entered the Zoom room. Such an inference could help

the jury conclude that Defendant was requesting child pornography during the time that he was in the Zoom Room on July 22, 2015.  Additionally, the visual depictions of the Live Event, when considered in combination with the chat logs from February 28, 2015 (for which the visual evidence was not available), would permit a jury to conclude that similar live content was streamed in the Zoom room on February 28, 2015, for which Defendant was alleged to have been present.  This inference is relevant to the jury's determination of Defendant's knowledge and mental state regarding his alleged participation in the charged conspiracies, as well as the jury's determination of whether Defendant knowingly received child pornography on February 28, 2015.

In regard to Defendant's Rule 403 argument, the Court finds that the introduction of the evidence related to the Live Event did not unfairly prejudice Defendant.  Although the Live Event evidence is inherently prejudicial due to its subject matter, various other pieces of evidence also linked Defendant to child pornography, and thus the prejudicial impact of the Live Event evidence as to Defendant was diluted.  See United States v. Resnick, No. 2:11-cr-68, 2013 WL 3874155, at *12 (N.D. Ill. July 26, 2013).  Given the relevance of the Live Event evidence identified supra, the Court concluded at trial that the probative value of the Live Event evidence was not outweighed by the danger of causing unfair prejudice to Defendant and admitted such evidence.  (Doc. No. 882 at 129: 5-12.)  The Court finds that it did not err in making that determination.  Additionally, the fact that the jury returned a mixed verdict—finding Defendant not guilty of Count 16—indicates that Defendant was not unfairly prejudiced by the admission of the Live Event evidence against him.  See United States v. Aramony, 88 F.3d 1369, 1378-79 (4th Cir. 1996) ("[T]he absence of unfair prejudice is further demonstrated by the fact that the jury

returned a mixed verdict, evidencing that the jury was not excited to irrational behavior during its deliberations.").

In regard to the statement made in the Government's rebuttal, the Court concludes that the statement did not improperly imply that Defendant was present during the Live Event. In light of the context of the surrounding statements, the Court concludes that it would have been clear to the jury that the Government was attributing the presence at the Live Event not to Defendant, but, rather, to Defendant Heatherly.[12] The Government first posed the rhetorical question, "And how do they do it? How do you call up child pornography in a Zoom room?" (Doc. No. 883 at 60: 16-18.) It answered its rhetorical question by providing an example of a message posted by Defendant Heatherly: "Anyone show any hot vids? Need to bust before work."[13] The Government next asserted that someone will then start playing child pornography

---

[12] The pertinent portion of the Government's rebuttal is as follows:

> They go there, and they make a request. They don't get to scroll through and select child pornography because it's a little more dynamic than that. But it's the Netflix of child pornography because they can call up child pornography. And how do they do it? How do you call up child pornography in a Zoom room? Anyone show any hot vids? Need to bust before work. Cued up, somebody will start playing it for you. Or, in that case, it turned out to be an actual live event. Right? It was a stream of visual depiction.
> How else can you call up child pornography on the Netflix of child pornography? Any hot baby vids? That's how you call up child pornography. That is why they don't have a lot of child pornography on their devices, because it was by design. They didn't want it, they were trying to avoid having it on their device for the very purpose of trying to avoid getting caught. They got caught.

(Doc. No. 883 at 24:14-15, 25: 1-3.)

[13] Although the actual message posted by Defendant Heatherly—"so appreciate if someone showed vids—need to bust before work"—differs slightly from the quote provided in the Government's rebuttal, the Court is confident that the jury understood that the Government

for you, "[o]r in that case, it turned out to be an actual live event." The Government then asked, "How else can you call up child pornography on the Netflix of child pornography?" It answered this question by providing an example of a message posted by Defendant: "Any hot baby vids?"

The Court concludes that the jury would have understood that the Government's first example, in which it referenced the Live Event, applied to Defendant Heatherly, while the second example, in which no connection to the Live Event was mentioned, applied to Defendant. The Court is confident that the jury was aware of who allegedly posted each of the messages due to the frequency with which these two messages and the identity of who allegedly posted them were discussed during trial. (Doc. Nos. 868 at 133: 5-9, 134: 8-11, 135: 1-3, 5-9; 880 at 66: 1-4, 105: 1-3; 881 at 125: 16-25; 882 at 49: 7-12, 61: 13-16.) In fact, earlier in its rebuttal, the Government had alluded to the frequency with which these two specific messages had been discussed at trial, stating, "Comments by each of the defendants, which we've heard over and over again: Any hot baby vids; so appreciate if someone showed vids, need to bust before work." (Doc. No. 883 at 24: 21-23.)

Even if the Government's statement, when viewed out of context, could be considered unclear as to who the Government was suggesting was present during the Live Event, the evidence at trial, including the testimony of Agent Austin Berrier (Doc. No. 880 at 181: 14-17), made it clear that Defendant was not present during the Live Event. The jury was instructed that it was to reach its decision based only on the evidence and that the statements and arguments made by the lawyers were not evidence. (Doc. No. 883 at 65: 5-6, 17-19.) The jury is presumed to have followed the Court's instructions. United States v. Hodge, 870 F.3d 184, 205 (3d Cir.

---

was referencing Defendant Heatherly's message, especially given that the most explicit portion of the quote—"need to bust before work"—was quoted from the chatroom log verbatim.

2017) (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987)).  Accordingly, the Court

concludes that Defendant was not prejudiced by the Government's reference to the Live Event

during its rebuttal.

### b.   Admission of Child Pornography Evidence Not Allegedly Connected to Defendant

### i.   Applicable Legal Standard

"Ordinarily, defendants jointly indicted should be tried together to conserve judicial

resources."  <u>United States v. Eufrasio</u>, 935 F.2d 553, 568 (3d Cir. 1991) (citing <u>United States v.

Sandini</u>, 888 F.2d 300, 306 (3d Cir. 1989)).  "The public interest in judicial economy favors joint

trials where the same evidence would be presented at separate trials of defendants charged with a

single conspiracy."  <u>Id.</u> (citing <u>United States v. De Peri</u>, 778 F.2d 963, 984 (3d Cir. 1985)).

However, Rule 14 of the Federal Rules of Criminal Procedure provides that if joinder of

defendants appears to prejudice a defendant, the Court may "sever the defendants' trials, or

provide any other relief that justice requires."  <u>See</u> Fed. R. Cr. P. 14(a).  A district court does not

abuse its discretion when it denies a Rule 14 motion for severance where there would have been

a substantial overlap in the evidence presented in separate trials.  <u>See</u> <u>Eufrasio</u>, 935 F.2d at 569.

The Third Circuit has stated that even when a trial court is found to have abused its discretion in

denying a Rule 14 motion for severance, reversal of a conviction is proper only when the

defendant meets his heavy burden of showing "clear and substantial prejudice resulting in a

manifestly unfair trial."  <u>See</u> <u>id.</u> at 568 (quoting <u>United States v. Reicherter</u>, 647 F.2d 397, 400

(3d Cir. 1981)) (emphasis and internal quotation marks omitted).

To determine whether a defendant has been prejudiced in this context, the relevant

question is "whether the jury could have been reasonably expected to compartmentalize the

allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence."

Id. (quoting De Peri, 778 F.2d at 984) (internal quotation marks omitted). "Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant." Id. (citing Sandini, 888 F.2d at 307). "Even where there is a risk of prejudice from a joint trial, a district court may mitigate the risk by instructing the jury specifically that the jury must consider the evidence relating to each defendant separately." United States v. Devos Ltd., No. 14-cr-574, 2019 U.S. Dist. LEXIS 9557, at *222 (E.D. Pa. Jan. 17, 2019) (citing United States v. Brassington, No. 09-cr-45, 2011 WL 3475471, at *10 n.10 (D.N.J. Aug. 9, 2011)).

### ii.     Parties' Arguments

Defendant argues that a new trial is necessary because the admission of child pornography evidence to which he was not allegedly connected unfairly prejudiced him. (Doc. No. 888 at 6.) He contends that he should have been tried separately from Defendant Heatherly because the child pornography evidence offered against Defendant Heatherly was so prejudicial that the jury could not separately consider that evidence and the evidence offered against Defendant. (Id.) In response, the Government asserts that Defendant's argument that the child pornography evidence linked to Defendant Heatherly unfairly prejudiced him is undermined by the fact that the jury acquitted Defendant Heatherly of two charges, including the most serious charge brought against him. (Doc. No. 894 at 58-59.) It also reiterates its prior arguments regarding the admission of the Live Event evidence. (Id. at 59-62.)

### iii.    Whether The Court Should Order a New Trial Due to the Admission of Child Pornography Evidence Not Allegedly Connected to Defendant

The Court concludes that Defendant was not unfairly prejudiced due to the admission of child pornography evidence allegedly connected to Defendant Heatherly, but not allegedly connected to Defendant. First, a joint trial served the public interest in this case due to the fact

the fact that both Defendant and Defendant Heatherly were charged with common conspiracy charges (Doc. No. 143), and a substantial amount of the evidence presented in the case was thus expected to overlap.  As articulated in the Court's Order denying Defendant's Rule 14 motion (Doc. No. 789), the Court found that the jury's ability to compartmentalize the evidence as to each defendant was not unattainable, and any potential for prejudice could be cured by providing tailored limiting instructions to the jury.  At trial, the Court specifically instructed the jury to consider the evidence as to each defendant separately.[14]  A jury is presumed to follow the instructions it receives from the Court, see Hodge, 870 F.3d at 205 (citing Richardson, 481 U.S. at 211), and the Court is confident that the jury was able to do so in this case.  Further, the fact that the jury returned mixed verdicts as to both Defendant and Defendant Heatherly indicates that Defendant was not unfairly prejudiced by the admission of the disputed evidence.  See Aramony, 88 F.3d at 1378-79 ("[T]he absence of unfair prejudice is further demonstrated by the fact that the jury returned a mixed verdict, evidencing that the jury was not excited to irrational behavior during its deliberations.").  Accordingly, the Court concludes that the admission of child pornography evidence not allegedly connected to Defendant did not unfairly prejudice

---

[14] Specifically, the Court instructed the jury:

> Also, in our system of justice, guilt or innocence is personal and individual.  You must separately consider the evidence against each defendant on each offense charged, and you must return a separate verdict for each defendant on each offense.  For each defendant and offense, you must decide whether the government has proved beyond a reasonable doubt that the particular defendant is guilty of the particular offense.
> Your decision on any one defendant or any offense, whether guilty or not guilty, should not influence your decision on any of the other defendants or offenses.  Each offense and each defendant should be considered separately.

(Doc. No. 883 at 74: 1-12.)

Defendant, and that the Court did not abuse its discretion in declining to try Defendant separately

from Defendant Heatherly.

**c.**        **Defendant's Proposed Jury Instruction Regarding Venue**

**i.**        **Applicable Legal Standard**

Section 3.09 of Third Circuit Model Criminal Jury Instructions, which pertains to venue,

provides that:

> The indictment alleges that some act in furtherance of the offense
> charged occurred here in <u>(name of venue)</u>. There is no
> requirement that <u>(all aspects of the offense charged)</u> <u>(the entire</u>
> <u>conspiracy)</u> take place here in <u>(name of venue)</u>.
>
> But for you to return a guilty verdict, the government must
> convince you that <u>(some act in furtherance of the crime charged)</u>
> <u>(either the agreement, or one of the overt acts)</u>, took place here in
> <u>(name of venue)</u>. Unlike all the elements that I have described,
> this fact only has to be proved by a preponderance of the evidence.
> This means the government only has to convince you that it is
> more likely than not that <u>(some act in furtherance of the crime</u>
> <u>charged)</u> <u>(part of the conspiracy)</u> took place here.
>
> Remember that the government must prove all the elements I have
> described beyond a reasonable doubt.

3d Cir. Crim. Model Jury Instructions § 3.09. Although the Court is unaware of any Third

Circuit precedent that directly addresses the adequacy of Model Third Circuit Jury Instructions §

3.09, the Third Circuit has approvingly cited the use of other sections of the its model criminal

jury instructions on a regular basis. <u>See, e.g.</u>, <u>United States v. Baroni</u>, 909 F.3d 550, 582-83 (3d

Cir. 2018) (finding that the trial court did not err when it instructed the jury as to the difference

between motive and intent consistent with § 5.04 of the Third Circuit Model Criminal Jury

Instructions); <u>United States v. Brown</u>, 658 F. App'x 100, 104 (3d Cir. 2016) (upholding trial

court's instruction based on § 4.14 Third Circuit Model Criminal Jury Instructions); <u>see also</u>

United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010) ("We have a hard time concluding that the use of our own model jury instruction can constitute error . . . .").

ii.      Parties' Arguments

Defendant argues that a new trial is necessary as to Counts 11, 12, and 13 because the Court should have provided the jury with Defendant's proposed jury instruction regarding venue. (Doc. No. 888 at 6-11.) Defendant argues that the jury instructions given at trial inadequately explained "that venue must be found as to each offense" and "that venue is appropriate for each offense if an element of the offense occurred in the Middle District of Pennsylvania," and that his proposed instructions would have clarified those points.[15] (Id. at 7.) Specifically, Defendant contends that the Court erred in making "offense" and "crime" plural in its instruction on venue. (Id. at 8.) Additionally, Defendant argues that the Third Circuit Model Jury Instruction was not

_____

[15] The challenged instructions that the Court gave at trial as to venue were:

> The superseding indictment alleges that some act in furtherance of the offenses charged occurred here in the Middle District of Pennsylvania. There is no requirement that all aspects of the offenses charged take place here in the Middle District of Pennsylvania, but for you to return a guilty verdict, the government must convince you that some act in furtherance of the crimes charged took place here in the Middle District of Pennsylvania.
> Unlike all of the elements of the charged offenses that I will describe, this fact only has to be proven by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that some act in furtherance of the crimes charged took place here.
> Remember that the government must prove all the elements I will now describe beyond a reasonable doubt.

(Doc. No. 883 at 81: 11-25.)

sufficient in this case given the Third Circuit's ruling in <u>Auernheimer</u>, where the court concluded that venue was appropriate only where an essential conduct element occurred.  (<u>Id.</u> at 9-10.)

In response, the Government argues that the Court's modifications to the Third Circuit Model Instruction simply accounted for the fact that multiple defendants were charged with multiple counts.  (Doc. No. 894 at 62-64.)  The Government also notes that Defendant's proposed instruction on venue (Doc. No. 887-1 at 3-4), uses the same plural forms of "offense" and "crime" that he objects to the Court using.  (<u>Id.</u> at 55-56.)  Additionally, the Government argues that <u>Auernheimer</u> is limited to its own facts, which is supported by the fact that the Third Circuit Model Instructions, which were last modified after <u>Auernheimer</u>, do not include any reference to <u>Auernheimer</u> or the venue requirements for which Defendant cites it.  (<u>Id.</u> at 66-67.)  Finally, the Government argues that Defendant's Rule 29 argument at trial, his argument to the jury on venue focused only on Count 16, and the jury's subsequent acquittal on Count 16 indicate that the jury understood that venue is specific to each count and, thus, any conceivable error regarding the venue instruction is moot.  (<u>Id.</u> at 67-68.)

### iii.  Whether the Court Should Grant a New Trial Due to the Jury Instruction Regarding Venue

The Court concludes that it did not err by declining to adopt Defendant's proposed jury instruction regarding venue.  The Court's venue instruction closely mirrored § 3.09 of the Third Circuit Model Criminal Jury Instructions.  One of the Court's few modifications to the model instruction was to make the words "crime" and "offense" plural due to the multiple counts and defendants in the case.  See <u>United States v. Tiangco</u>, 225 F. Supp. 3d 274, 283 n.10 (D.N.J. 2016) (using a similar jury instruction regarding venue in which "crime" and "offense" are pluralized).  The Court finds that such a modification did not alter the substantive meaning of the challenged instruction.  The Court also concludes that because the Third Circuit adopted the

most recent revision of Section 3.09 of the Third Circuit Model Criminal Jury Instructions in April of 2015, a year after its ruling in <u>Auernheimer</u>, that instructing the jury as to the specific ruling in <u>Auernheimer</u> was unnecessary.  Accordingly, the Court finds that it did not err in its venue instruction to the jury.

**III.**     **CONCLUSION**

Based upon the foregoing, the Court will deny Defendant's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (Doc. No. 885), and motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (Doc. No. 887).  An Order consistent with this Memorandum follows.